E. A. WIGHT,

*Plaintiff and Appellant,*

vs.

OSCAR LINDEN,

*Defendant and Respondent.*

(No. 2502; November 13, 1951; 237 Pac. (2d) 475)

68

For the plaintiff and appellant the cause was submitted upon the brief and also oral argument of Raymond B. Whitaker of Casper, Wyoming.

For the defendant and respondent the cause was submitted upon the brief of McAvoy & Lowe of Newcastle, Wyoming, and also oral argument by Mr. Preston T. McAvoy.

## OPINION

RINER, Justice.

This action, which is a suit for specific performance of a portion of a certain memorandum in writing signed by the parties to this litigation said memorandum having been prepared as an escrow direction to The First State Bank of Newcastle, Wyoming, concerning the delivery by it of a certain oil and gas lease of described lands of the defendant, Oscar Linden, to E. A. Wight. The plaintiff, E. A. Wight in the suit and appellant here, originally brought the suit in the District Court of Weston County in the 6th Judicial District against the said defendant, Linden. These parties will hereinafter be usually designated as aligned in the trial court or by their respective surnames.

The suit as hereinbefore stated commenced in the District Court of Weston County, was moved to and tried in the district court of Niobrara County which also is a part of the 6th Judicial District, and after having been referred for disposition to several district judges was finally tried by the Hon. C. D. Murane, presiding judge of the 7th Judicial District sitting without a jury.

This escrow direction dated June 4, 1947, in its entirety reads as follows:

"June 4th, 1947

First State Bank,
Newcastle, Wyoming.
Gentlemen:

There is deposited with you herewith an oil and gas lease covering W½NE¼, N½NW¼, SE¼NW¼, N½SW¼, Section 14; NE¼SE¼, Section 15, Township 44 N. Range 64 W. in Weston County, Wyoming, dated June 4, 1947, for a term of one year, in which Oscar Linden, Newcastle, Wyo., is lessor and E. A. Wight, Billings, Montana, is lessee. Said lease is in duplicate.

Your instructions are to deliver to E. A. Wight the original of said lease and to Oscar Linden the duplicate of said lease if there is, on or before June 4, 1948, an oil drilling rig set up and ready to drill on the lands described in the said lease. If the 2 copies of lease are still in your hands on June 4, 1948, they are to be delivered to Oscar Linden.

The undersigned Oscar Linden agrees with the undersigned E. A. Wight to lease all his lands on which he holds any mineral rights to E. A. Wight for a term of three years at an annual rental of $2.00 per acre at such time as requested by E. A. Wight. Such agreement shall expire on June 4, 1948. It is further agreed that on lands on which Oscar Linden owns only 87½% of royalty the royalty to be paid him shall be only 1%. It is further agreed that you, as escrow agent, shall have no requirement whatever as to this leasing arrangement.

Dated this 4th day of June, 1947.

(signed)  E. A. Wight
(signed)  Oscar  Linden

The above mentioned lease, in duplicate, received and the terms of the escrow agreed to.

First State Bank, Newcastle, Wyo.
(signed)  Andy Hansen, Cashier."

This instrument, typed on the stationery of the First State Bank of Newcastle, Wyoming, after banking

hours by Andy Hansen, its cashier, was in its substance largely prepared in advance by the plaintiff, Wight, who describes himself in his testimony as a "dealer in the oil and gas business" and at the time last mentioned was engaged in the "process of blocking up an area for the purpose of oil and gas development." His residence is in Montana. Mr. Linden is an old ranchman, 77 years old, for many years engaged in the ranch business in Wyoming, but at present, as we understand, retired.

The escrow direction aforesaid was accompanied by an oil and gas lease in duplicate signed by the two parties to this suit. Its first and second paragraphs read as follows:

"THIS AGREEMENT, made and entered this 4th day of June 1947, by and between OSCAR LINDEN of Newcastle, Wyoming, party of the first part, hereinafter called lessor (whether one or more), and E. A. WIGHT of Billings, Montana, party of the second part, lessee; "WITNESSETH, That the said lessor for and in consideration of Twenty Five ($25.00) & No/100—Dollars, cash in hand paid, receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of the lessee to be paid, kept and performed, has granted, demised, leased and let and by these presents does grant, demise, lease and let unto the said lessee, for the sole and only purpose of mining and operating for oil and gas, laying pipe lines and building tanks, power stations and structures thereon to produce, save and take care of said products, all that certain tract of land situated in the County of Weston, State of Wyoming, described as follows to-wit: $W\frac{1}{2}NE\frac{1}{4}$, $N\frac{1}{2}NW\frac{1}{4}$, $SE\frac{1}{4}NW\frac{1}{4}$, $N\frac{1}{2}SW\frac{1}{4}$, Sec. 14; $NE\frac{1}{4}SE\frac{1}{4}$, Sec. 15; Twp. 44, N. Rge. 64 W. of Section . . . Township . . . Range . . ., and containing 320 acres, more or less.

"It is agreed that this lease shall remain in force for a term of One (1) years from this date, and as long thereafter as oil or gas or either of them, is produced from said land by the lessee."

The written lease aforesaid was acknowledged by both Wight and Linden before Hansen, as a notary public. It seems Wight and Hansen went to the bank for this purpose after Wight had prepared the substance of the escrow direction in his hotel room, and also the forms of oil and gas lease aforesaid, Linden having very little to say in the course of the preparation of these instruments.

It is the third paragraph of the escrow direction instrument aforesaid upon which this suit for specific performance is attempted to be based. The principal defense presented and argued to the trial court and upon which that court disposed of the case is found in the language of the Statute of Frauds of this state (section 5-101 W.C.S. 1945) which reads so far as at this time pertinent:

"In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith: * * *

"Fifth—Every agreement or contract for the sale of real estate, or the lease thereof, for more than one year;"

This defense was advanced by the pleadings of the parties as follows:

Plaintiff's petition in its paragraph number one states:

"That from prior to June 4, 1947 to date the defendant was, and is now seized in fee and the owner of all oil and gas and mineral rights in, to and on the following described lands and premises located in Weston County, Wyoming:

"SE¼SW¼, S½SE½, Sec. 20: SE¼NW¼, E½, E½SW¼, SW¼SW¼, Sec. 21: NE¼, E½SE¼, W½SW¼, Sec. 22: SE¼NW¼, W½W½, NE¼SW¼, Sec. 23: W½NE¼, NW¼, N½SW¼, Sec. 27: N½,

N½SW¼, SE¼SW¼, Sec. 28: NE¼, E½NW¼, NW¼NW½, Sec. 29: NE¼NE¼, NE¼SE¼, Sec. 30: all in Township 44, North Range 64 West 6th P.M."

Certain lands are then described as located in sections 20, 21, 22, 23, 27, 28, 29 and 30, all in Township 44 North, Range 64 West of the Sixth Principal Meridian.

Paragraph 2 of plaintiff's petition avers:

"That from prior to June 4, 1947 to date the defendant was, and is now, the owner of an undivided ninety-eight and one-half percent (98½%) interest in and to all oil and gas and mineral rights in, to and on the following described land and premises located in Weston County, Wyoming:

"N½NW¼, W½NE¼, SE¼NW½, N½SW¼ of Sec. 14; NE¼SE¼, Sec. 15; all in Township 44, North Range of 64 West 6th P.M."

It will be noted that the lands described in the paragraph immediately foregoing are those embraced within the written lease signed by the parties and whose first and second paragraphs are quoted above, and concerning which the escrow direction instrument was in fact prepared and which were dealt with in its first two paragraphs.

Paragraph 3 of plaintiff's pleading alleges:

"That from prior to June 4, 1947 to date defendant was, and is now, the owner of an undivided seven-eighths (⅞) or eighty-seven and one-half per cent (87½%) interest in and to all oil and gas and mineral rights in, to and on the following described lands and premises located in Weston County, Wyoming:"

Certain other lands are then described as located in sections 14, 15 and 22 Township 44 North Range 64. Paragraph 4 of the petition states:

"That from prior to June 4, 1947 to date defendant was, and is now, the owner of an undivided one-half (½) or

fifty per cent (50%) interest in and to all oil and gas and mineral rights in, to and on the following lands and premises located in Weston County, Wyoming:"

Certain additional lands in sections 19, 20, 29 and 30 also in Township 44 North Range 64, West of the 6th Principal Meridian are then described.

Paragraph 5 of said petition reads thus verbatim: "That on or about June 4, 1947 plaintiff and defendant entered into an agreement of and concerning the lands and premises mentioned and described in paragraphs one (1), two (2), three (3), and four (4) above, a memorandum of which agreement is attached hereto, marked Exhibit A and by this reference made a part hereof the same as if set forth herein."

Exhibit A is the escrow direction instrument quoted above.

Paragraph 6 of plaintiff's petition further states substantially that "Under the terms and provisions of the said agreement" the plaintiff and defendant agreed:

A. That the defendant should execute and deliver to plaintiff an oil and gas lease to the lands described in paragraph 2 above.

B. That defendant should deposit the original and one copy of said lease with the First State Bank of Newcastle, Wyoming, as escrow agent, directing that institution to deliver the original lease to plaintiff after plaintiff had an oil and gas drilling rig on the lands described in the lease form, on or before June 4, 1948, ready to proceed with drilling and in further consideration of the payment of $25.00 to the defendant, Linden, by the plaintiff Wight.

C. That if the "aforementioned land" was drilled to a depth of 5500 ft. in quest of oil and gas then the defendant was, by said agreement, to execute and deliver to plaintiff an oil and gas and mineral lease "of

*all* of his interests to oil and gas and mineral rights of and to all of the lands described in paragraphs one, three and four above" excepting certain stated royalty interests held by defendant therein. In this connection it may also be observed that no such agreement as thus pleaded in "C" supra was proven to have been made by defendant either as written in said Exhibit A aforesaid or otherwise in writing. If such agreement was made it was entirely oral and must be regarded as nonexistent under the rule governing the findings of the court below on conflicting testimony.

D. That under the terms of the lease mentioned in "C" above plaintiff was to pay defendant an annual rental of $2.00 per acre for the lands described in paragraphs one and three and $1.00 per acre for the lands described in paragraph four supra; these payments to be made to the bank above mentioned on or before June 4, 1948 and annually on June 4th thereafter for the two years following.

E. That the lease mentioned in "C" was to extend over a period of three years from June 4, 1948 to June 4, 1951 and as long thereafter "as oil and gas should be produced from the lands involved."

Paragraphs 7, 8 and 9 of plaintiff's petition charged that plaintiff complied with the requirements as to the lands described in paragraph 2 supra of plaintiff's petition. Paragraphs 10 and 11 allege that "the aforementioned land" was drilled to a depth in excess of 5500 ft. and in due time plaintiff tendered to said bank the prescribed rentals on said land—, referring to the rentals agreed to be paid as set forth in the third paragraph of plaintiff's exhibit A aforesaid.

It is unnecessary to review the remainder of plaintiff's petition except to note that it is alleged that defendant has refused and still refuses to comply with

the plaintiff's request that he lease to the latter the lands described in paragraphs 1, 3 and 4 of plaintiff's petition excepting therefrom certain described royalty interests held by the defendant therein. It is prayed that the latter be compelled by the court to execute such a lease. In this connection it may be further observed that it is nowhere alleged in plaintiff's pleading nor is it proven in the record before us that the lands described in paragraphs one, two, three and four were *all* the lands of the defendant.

The pertinent portion the first defense of defendant's answer to plaintiff's pleading appears in its paragraph 6 which specifically alleges verbatim as follows:

"This Defendant specifically denies as alleged paragraph 5 of Plaintiff's Petition that he ever on or about June 4, 1947 or at any other time entered into an agreement as alleged in said paragraph 5 of Plaintiff's Petition or any agreement of any kind, nature, substance, or character of and concerning the lands and premises and described in paragraphs 1 and 2 and 3 and 4 of Plaintiff's said Petition.

"This Defendant specifically denies that any contract or agreement was ever made between the Plaintiff on the one side and this Defendant on the other side concerning the land and premises mentioned and described in said paragraph five of Plaintiff's Petition. This Defendant admits that upon the fourth day of June A.D. 1947 the Defendant signed an instrument of which 'exhibit a', described in paragraph five of Plaintiff's Petition purports to be a photostatic copy."

The second defense of defendant's answer specifically pleads the Statute of Frauds as regards the lands covered by paragraphs 1, 3 and 4 of plaintiff's petition. The material parts of the second defense of said answer required to be considered at present are, paragraphs "2" and "3" which read verbatim:

2. "This Defendant further answering paragraph 6 of Plaintiff's Petition alleges and states:

"That the matters and allegations and statements and the said action as alleged in said paragraph 6 is founded on an alleged oral agreement with the Defendant not in writing for the lease of real estate and the sale of the oil, gas and other minerals therein contained for a period of more than one year which agreement is void under the statute of frauds of Wyoming, Wyoming Compiled Statutes 1945, Section 5-101 First and Fifth: 'First—every agreement that by its terms is not to be performed within one year from the making thereof;' and which provides:

" 'Fifth—Every agreement or contract for the sale of real estate or the lease thereof for more than one year' shall be void if not in writing.

3. "That said pretended and alleged agreement is wholly unsupported by any consideration. That in truth and in fact the only sum of money paid at any time by Plaintiff to Defendant was and is the sum of $25.00, which was paid in the form of a check and was in consideration of and payment for the Oil and Gas Lease described in the answer and cross-petition of this Defendant."

As before stated the cause was tried in the district court by the Judge to whom it was ultimately referred, without a jury, a jury having been expressly waived. His judgment dated July 8, 1950 embraced findings and judgment in accord therewith upholding the lease on the lands described in paragraph 2 of plaintiff's petition aforesaid as against the attacks made upon it by defendant's cross-petition. No complaint is made of this action by the trial court in this court and consequently no further consideration need be herein given relative to that phase of the case. All other issues joined by the pleadings of the parties were found in favor of the defendant and against the plaintiff. In consequence of this finding it was adjudged:

"That the Plaintiff's Petition herein be and the same hereby is dismissed, and the prayer thereof be and the same hereby is denied."

Plaintiff and appellant has filed a brief in support of his criticism of the district court's judgment which is really and in fact a "brief", consisting of but one page of typewritten matter. While compact and succinct brief work which thoroughly discusses the points relied on for the reversal of a judgment attacked by the appealing party is very welcome, we are not aided to any great extent where mere outline points only are presented without any discussion whatever concerning them. But inasmuch as this case was argued orally we will do what we can in disposing of the "points" urged in the appellant's brief.

It is first stated in plaintiff's brief that the:

"Mineral interests of the land in question was admitted by defendant in paragraph 7 of the pre-trial conference stipulation."

Paragraph 7 of the pre-trial conference stipulation reads:

"It is further agreed and stipulated that from prior to June 4, 1947 and since said date the defendant has been and now is the absolute owner of a legal estate in fee simple of the lands and premises set forth and described in paragraph 1 of the First Cause of Action in Defendant's Cross Petition, as amended, as regards the surface, and the owner of a legal estate in fee simple absolute of that proportion of the oil, gas and other minerals in and under the lands as set forth in sub-paragraphs a, b, c and d of said paragraph 1, as amended."

As hereinbefore indicated neither in this paragraph nor elsewhere in the record is it set forth or attempted to be proven on behalf of the plaintiff that the lands referred to in said paragraph 7 are *"all"* the lands of the defendant as mentioned in the third paragraph of Exhibit A, aforesaid, that instrument being the only agreement in writing upon which reliance can be placed in avoidance of the provisions of the Statute of Frauds.

In addition it may be also noted that the third paragraph aforesaid signed by the parties contained the provision "such agreement shall expire on June 4, 1948." This date had long since elapsed when this case was tried in the district court on June 28, 1950, and the several days following. It would seem that at that time it was no longer in effect assuming even that the third paragraph aforesaid complied with the Statute of Frauds, a fact concerning which there is some doubt.

It is stated as point No. 2 of the plaintiff's brief that: "The defendant agreed to lease said lands for oil and gas purposes to plaintiff."

Plaintiff in support of this position refers us to plaintiff's Exhibit 2-L and testimony on pages 128-133 of the transcript are pressed upon our attention. Upon examination we find that the exhibit mentioned is identical with Exhibit A above quoted and that it does not support the point for while exhibit A refers to *all* of the defendant's lands it does not appear therefrom on which of all his lands he "holds any mineral rights." The testimony indicated in this point is that of the plaintiff himself which must be rejected in view of the trial court's adverse general finding against him.

The third suggested point in plaintiff's brief is that:

"Plaintiff performed his part of contract by drilling the well." The only well drilled was on lands covered by an entirely different instrument, to-wit: the one referred to in paragraphs 1 and 2 of plaintiff's exhibit A and concerning which the escrow agreement directed to the First State Bank of Newcastle was to operate. Further, that instrument by its express provisions was for "a term of one year only." It was dated June 4, 1947. It also had expired at the time of the trial. The well drilled was a dry hole and it does not appear that there was any oil or gas produced at any subsequent

time from the lands of the defendant involved in this suit.

It is insisted by the plaintiff's fourth point urged in his brief that the "Defendant admitted existence of contract," and certain testimony of witnesses for plaintiff in the record is mentioned as supporting this view. There is no attempted discussion of this point but we find that pages 206, 187 and 194 of the record are called to our attention. We have examined those pages and are obliged to respond that under the findings of the trial court this testimony is here of no avail. It was contradicted by the defendant and his witnesses, and the trial court found in favor of the latter. The suggested point is therefore valueless.

The fifth point advanced by plaintiff's brief reads: "The trial court erred in limiting its consideration to Plaintiff's Exhibit 2-L and failing to consider the over-all oral contract between the parties, as performance or part performance removes an oral contract from the statute of frauds."

Among the numerous conclusive answers thereto it is sufficient to remind counsel that under the general finding of the trial court adverse to the plaintiff we must conclude here that there was no oral contract between the parties hereto. It may be observed additionally that the brief of plaintiff fails to indicate what is meant by "the over-all oral contract between the parties." We are not exactly clairvoyants and cannot tell from what appears in plaintiff's brief other than by conjecture the thought he intended to convey by the use of the quoted language. So far as we can tell the authorities he cites are not in point.

Counsel asserts in his sixth point that:

"Description of land described as "all" is sufficiently clear to authorize decree of specific performance."

The authorities cited in support of this position are not in point for the descriptions involved in them contained items which enabled the lands affected to be identified positively. There are no pleadings or proofs before us which disclose that the lands the lease of which specific performance is sought were "all" the lands of the defendant in which he "holds mineral rights." This court has held that external evidence cannot be used for the double purpose of describing the lands and then applying the description. Freeburgh vs. Lamoureux 15 Wyo. 22, 85 P. 1054.

The seventh point pressed by plaintiff is that a "proper tender was made by plaintiff." Page 308 of the testimony, plaintiff's exhibit 2-F is called to our attention. Upon examination the record submitted discloses that on May 8, 1948, Linden authorized the First State Bank of Newcastle as escrow agent to make delivery to Wight of the 320 acre lease of his lands aforesaid, but in the same letter he stated that "the agreement in the escrow letter as to the leasing of my additional lands is also null and void for the reason that no consideration was paid for such agreement." This position taken by Linden was confirmed by his letter of June 9, 1948 to the escrow agent directing that party "to return the oil and gas leases and bank drafts in Linden's favor and for the latter's attention," saying that he would not execute the leases and accept the payment. The oil and gas leases sent to the First State Bank, the escrow agent, aforesaid, with bank draft to cover the payment required by Exhibit A supra viz. $2.00 per acre were received by that Bank but can hardly be regarded as a "tender" inasmuch as these lease forms prepared by plaintiff called for lease terms of *ten* years instead of *three* as Exhibit A signed by the parties required. These proposed forms of lease for ten years were received by the escrow agent on June 4, 1948. It was not

until after June 4, 1948, to-wit on June 14, 1948 that the defect in the proposed forms of the leases just referred to was attempted to be cured, to-wit, as stated above on June 14, 1948. That date by the express provisions of Exhibit A supra was too late. Even then the plaintiff wanted the escrow agent to endeavor to persuade Linden to agree to a five-year term. It is needless to say Linden never consented to these proposed changes in the memorandum in writing, Exhibit A. The bank drafts and leases were on June 9th returned by the escrow agent to plaintiff pursuant to explicit written direction from the defendant Linden.

Though nothing of the sort appears in plaintiff's brief, in his correspondence with the escrow agent, First State Bank of Newcastle, Wyoming, and through which institution he attempted finally to negotiate with Linden on the matters on which they could not agree he speaks of Exhibit A as an "option" to lease. If it be regarded as such, being a mere offer and without consideration it could be withdrawn at any time before acceptance. The record shows that such a withdrawal based upon Linden's instructions occurred.

In Frank vs. Stratford-Handcock 13 Wyo. 37, 55, 77 P. 134 Mr. Justice Potter pointed out that:

"But a mere proposal without consideration creates no obligation unless accepted according to its terms, and it may, therefore, be withdrawn at any time before acceptance; though if such an offer is allowed to remain open until accepted, it will become a binding contract. When the option given upon a consideration is accepted within the time allowed, and according to its terms, the offer and acceptance constitute a contract of sale, and the same result flows from the acceptance of an offer without consideration, if accepted before the offer is withdrawn or revoked."

This case was followed on this point by the subsequent

ruling of this court in Kay vs. Spencer 29 Wyo. 382, 213 P. 571.

Having reached the conclusion after careful study of the record and briefs of the parties that the district court's judgment in the instant case was correct, an order affirming it should be entered. Many other reasons other than those hereinabove set forth, demonstrate why our conclusion in this matter is proper, but no useful purpose would be accomplished by further extending this opinion.

*Affirmed.*

KIMBALL, C. J., and BLUME, J., concur.