AMERICAN HANDKERCHIEF CORP., PLAINTIFF-APPEL-
LANT, v. FRANNAT REALTY COMPANY, DEFENDANT-
RESPONDENT.

Argued November 8, 1954—Decided December 6, 1954.

Judgment affirmed.

13

*Mr. Murray Greiman* argued the cause for the appellant.

*Mr. Charles B. Collins* argued the cause for the respondent (*Messrs. Carpenter, Gilmour & Dwyer,* attorneys; *Mr. Robert R. Whelan,* on the brief).

The opinion of the court was delivered by
VANDERBILT, C. J.   The plaintiff was the tenant of the defendant's factory building in Jersey City under two long term leases, which by agreement in writing had been extended to January 31, 1952.   In June 1949 the parties began to negotiate for an extension of these leases.   In October 1949, after several conferences had been held, Mr. Marell, the president of the plaintiff corporation, sent Mr. Frank, the vice-president of the defendant corporation, a draft of what the plaintiff calls "an option agreement."   Mr. Frank circulated this draft among the other directors of the defendant corporation, who then returned it to him with notes of suggested changes.   Mr. Frank then incorporated these sug-

gestions in a new draft and forwarded two copies signed by him to Mr. Marell for signature by the plaintiff. This draft, which was prepared without the aid of legal counsel, was as follows:

"WHEREAS, There are certain Leases dated December 2, 1944 and January 26, 1947, now in effect until January 31, 1952, between Frannat Realty Company, as Landlord, and American Handkerchief Corp., as Tenant, and

WHEREAS, It has been mutually agreed that said Leases may be extended in the event of a *bona fide* and approved sublease by the tenant from their present expiration on January 31, 1952, for an additional two years and eight months, up to and expiring April 30, 1955, upon the terms and conditions hereinafter set forth,

Now, therefore, it is hereby agreed as follows:—

1. For One Dollar ($1.00), and other good and valuable consideration, said Tenant is hereby given the right, to renew and extend said Leases (dated December 2, 1944, and January 28, 1947, both of said Leases being duly extended on October 18, 1948), until April 30, 1955, in the event of a *bona fide* and approved sublease by the Tenant.

2. In the event of a *bona fide* and approved sublease by the Tenant, then and in that event, the Tenant shall, pay an additional rental of Seven Hundred and Fifty Dollars ($750.00) per year, or a total rental of Six Hundred Twelve and 50/100 Dollars ($612.50) per month instead of the present rental of Five Hundred and Fifty Dollars ($550.00) per month under said Leases, and the Landlord shall have the right, at his option, to terminate said extended Leases at any time after the date of this agreement going into force, in case of a *bona fide* sale of the property upon giving ninety days' notice in writing, by registered mail, at any time of his intention to so terminate, and said Leases shall thereupon, in all things, cease and end at the expiration of ninety days, following ninety days from the date of mailing of such notice as aforesaid.

3. Except for the foregoing conditions and option agreement, the renewal and extension shall be on the same terms, covenants and provisions of the said Leases dated December 2, 1944, and January 28, 1947, which are now in effect and which are incorporated herein by reference thereto as if set forth herein at length.

FRANNAT REALTY COMPANY,
Wm. A. Frank
AMERICAN HANDKERCHIEF CORP.,
by Irving Marell, Pres."

Although Mr. Marell's signature appears on the draft put in evidence, he never delivered a signed copy to the plaintiff despite the fact that on October 26, 1949 the defendant sent

a letter to the plaintiff calling attention to the fact that it had not received a signed copy and requesting that this be taken care of promptly. Moreover, Mr. Frank testified that shortly after he delivered the draft to Mr. Marell, Mr. Marell informed him that it was not satisfactory and would not be signed by the plaintiff.

On November 11, 1949 the plaintiff entered into a sublease for a part of the building for a term extending to April 30, 1955, the period mentioned in the quoted draft, but neither this sublease nor two others subsequently entered into by the plaintiff were ever submitted to or approved by the defendant. On September 25, 1951 the defendant's attorney advised the plaintiff by mail that the defendant did not intend to renew the leases which were to expire on January 31, 1952. On January 18, 1952 the plaintiff attempted to exercise its rights under the so-called option agreement. At the expiration of the term the defendant instituted in the Hudson County District Court an action to dispossess the plaintiff, which resulted in a judgment of eviction. The plaintiff then instituted this action in the Hudson County Court for damages suffered from the allegedly unlawful eviction resulting from that judgment.

On the completion of the plaintiff's case the defendant moved for an involuntary dismissal on the ground, among others, that there had been no consideration for the so-called option agreement. The trial judge denied the motion, stating that he found that there had been "consideration for the option agreement." At the end of the trial he submitted to the jury the question "whether there was a meeting of the minds between the plaintiff and defendant in this case." The jury returned a verdict of no cause of action and from the judgment entered thereon the plaintiff appealed to the Appellate Division of the Superior Court. That court affirmed the judgment of the trial court and we granted the plaintiff's petition for certification.

The defendant has consistently claimed that the writing in question was a mere offer without valid consideration that never ripened into a binding option-contract be-

tween the parties because it was withdrawn prior to any acceptance by the plaintiff. The writing purported to give the plaintiff the "right to renew" the two leases upon the terms therein provided. If based upon consideration it is an option-contract, and as such irrevocable. As stated in *Martindell v. Fiduciary Counsel, Inc.*, 133 *N. J. Eq.* 408, 410 (*E. & A.* 1943):

> "A continuing offer grounded in a sufficient consideration constitutes an 'option,' as the term is known to the law. Since it is a promise upon a legal consideration, it is irrevocable for the time of its continuance, and takes the classification of a contract."

Until the conditions set forth in the option (such as the submission to the defendant of a *"bona fide* sublease" and the landlord's approval thereof) are performed by the plaintiff, or the time limits specified therein have expired, the option-contract is binding on the defendant alone, *Restatement of the Law of Contracts, sec.* 24.

On the other hand, if the quoted draft was not supported by consideration, it is a mere offer only. Although such an offer is at times referred to as an option, *Restatement of the Law of Contracts, sec.* 24, *comment* (*c*), it is not a contract and "has, of course, no binding force either at law nor in equity," on the offeror, 5 *Williston on Contracts* (*rev. ed.*), *sec.* 1441, and since it is merely an offer the usual rule applies that the offeror may revoke it so long as he does so before the offeree accepts it, *Cochran v. Taylor*, 273 *N. Y.* 172, 7 *N. E.* 2d 89, 90 (*Ct. App.* 1937); *Bard v. Kent*, 19 *Cal.* 2d 449, 122 *P.* 2d 8, 139 *A. L. R.* 1032 (*Sup. Ct.* 1942); *Wight v. Linden*, 69 *Wyo.* 67, 237 *P.* 2d 475, 481 (*Sup. Ct.* 1951); 5 *Williston, supra, sec.* 1441, 1 *Corbin on Contracts, sec.* 263. Since the defendant-offeror sought to revoke the offer prior to its acceptance by the plaintiff, the pertinent question is whether this writing was without consideration and thus a mere offer, or whether it was an option supported by valid consideration.

The draft in question provides that the right to renew the leases was given "for One Dollar ($1.00) and other

good and valuable consideration." Insofar as the one dollar is concerned, the plaintiff admits that it was never paid. And although it is an elementary principle that the law will not enter into an inquiry as to the adequacy of the consideration, *Fiedler Corp. v. Manufacturer's Development Co.*, 108 *N. J. L.* 364, 367 (*E. & A.* 1932); *Burt v. Brownstone Realty Co.*, 95 *N. J. L.* 457, 461 (*E. & A.* 1921), it is equally well settled that consideration, no matter how small, must be the "price bargained for and paid for a promise," *Coast National Bank v. Bloom*, 113 *N. J. L.* 597, 602 (*E. & A.* 1934); *Joseph Lande & Son v. Wellsco Realty Co.*, 131 *N. J. L.* 191, 198 (*E. & A.* 1943), and "an inquiry whether the dollar was really bargained for as the consideration will always be pertinent, for where a promise of value is stated to have been made for a small money consideration there is often reason to doubt whether a bargain to exchange the sum mentioned for the promise was really intended by the parties," 1 *Williston, supra, sec.* 115. See *Robertson v. Garvan*, 270 *F.* 643, 648 (*D. C. N. Y.* 1920), *Kay v. Spencer*, 29 *Wyo.* 382, 213 *P.* 571, 27 *A. L. R.* 1122 (*Sup. Ct.* 1923); *Finegan v. Prudential Insurance Company of America*, 300 *Mass.* 147, 14 *N. E. 2d* 172, 116 *A. L. R.* 535 (*Sup. Jud. Ct.* 1938); 1 *Corbin, supra, sec.* 130. See annotation, 27 *A. L. R.* 1129. It is clear that not only was the one dollar never paid, but it was not the consideration bargained for between the parties.

We also fail to discover any proof in the record of "other good and valuable consideration" and counsel has not directed our attention to anything which could properly qualify as such. Counsel does mention that it was "because of the option agreement" that plaintiff secured a subtenant for a vacant portion of the building, claiming that plaintiff's action in thus relying upon the "option agreement" constituted consideration. There is authority, of course, to the effect that although an offer is without consideration and thus revocable, it becomes irrevocable by subsequent action in reliance upon it, 1 *Corbin, supra, secs.* 49–51, 263. But in these cases the act of the offeree, even if not constituting part of the per-

formance bargained for and for which the offer was made, must be one that the offeror had reason to foresee, 1 *Corbin, supra, sec.* 51. Here quite clearly the defendant had no reason to expect that the plaintiff would enter into a binding sublease prior to obtaining its approval of the new subtenants and subleases, so it cannot be said that the plaintiff's change of position here made the other irrevocable. The offer did not anticipate any such action on the part of the plaintiff. "If the action by the offeree is not part performance of the requested consideration and also is not such action as the offeror had reason to foresee as the result of his offer, it will not make the offer irrevocable in any sense," 1 *Corbin, supra, sec.* 51. "If an act is requested, that very act and no other must be given," 1 *Williston, supra, sec.* 73. See *Petterson v. Pattberg,* 248 *N. Y.* 86, 88, 161 *N. E.* 428, 429 (*Ct. App.* 1928) ; *Cowan v. DeWitt,* 205 *Misc.* 130, 129 *N. Y. S. 2d* 724, 730 (*Sup. Ct.* 1954). We therefore conclude that there was no consideration for the offer and therefore it was effectively revoked by the defendant in September 1951, prior to acceptance by the plaintiff.

The writing in question is not under seal so the question of the effect of a seal on an option-contract is not before us; see *N. J. S. 2A*:82–3, *Aller v. Aller,* 40 *N. J. L.* 446 (*Sup. Ct.* 1878) ; *United & Globe Rubber Mfg. Co. v. Conard,* 80 *N. J. L.* 286 (*E. & A.* 1910) ; *Weinberg v. Weinberg,* 118 *N. J. Eq.* 97, 98 (*Ch.* 1935) ; *Hildinger v. Bishop,* 126 *N. J. Eq.* 334, 340 (*Ch.* 1939) ; *Zirk v. Nohr,* 127 *N. J. L.* 217 (*E. & A.* 1941).

██ There is, however, another ground for rejecting plaintiff's contentions. Even assuming the existence of a valid option-contract here, it is quite apparent that the plaintiff never exercised its rights under the option. The writing in question specifically gave the right to renew the leases only "in the event of a *bona fide* and approved sublease." It was admitted by the plaintiff that no subleases were submitted to the defendant, and thus no approval was given. Since the renewal of the leases was expressly conditioned upon such approval, necessarily no valid agreement

was reached where there was a failure to obtain this consent. As stated in *Duff v. Trenton Beverage Co.*, 4 *N. J.* 595, 604 (1950), "generally, no liability can arise on a promise subject to a condition precedent until the condition is met."

Since the offer was revoked prior to its attempted acceptance, it is unnecessary to pass on other issues raised, such as how long the offer was to remain open and whether there was, as determined by the Appellate Division of the Superior Court, a failure of performance.

The judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.