ALAMO CLAY PRODUCTS,
INC., Appellant,

v.

GUNN TILE COMPANY OF SAN
ANTONIO, INC., Appellee.

No. 16184.

Court of Civil Appeals of Texas,
San Antonio.

Jan. 23, 1980.
Rehearing Denied April 9, 1980.

James G. Murry, San Antonio, for appellant.

Dennis Reese, Small, Craig & Werkenthin, Austin, for appellee.

CADENA, Chief Justice.

Defendant, Alamo Clay Products, Inc., appeals from a judgment based on jury findings awarding plaintiff, Gunn Tile Company of San Antonio, Inc., $11,000.00 as damages for defendant's breach of its contractual obligation to deliver to plaintiff 61,000 square feet of $8'' \times 12'' \times 1\frac{3}{8}''$ paving bricks or tiles. These items will be referred to in this opinion as $8 \times 12$ pavers.

In May, 1972, the general contract in connection with some construction work on the campus of the University of Texas at San Antonio (UTSA) had been awarded to T. C. Bateson Co. Defendant was aware of the proposed construction and had distributed information containing quotations of prices on the tile to be used to various tile contractors, including plaintiff. The prices reflected in such documents included quotations on the cost of the $8 \times 12$ pavers. Plaintiff, after having received the quotations from defendant, submitted a bid to the general contractor concerning the tile work required for the UTSA project. The instrument distributed by defendant stated that the prices quoted were binding for 15 days unless specifically stated otherwise, and that in no event would the prices quoted be binding on defendant for more than 30 days after the signing of the general contract.

Plaintiff was the successful bidder for the tile work. Its contract with the general contractor specified the use of pavers of a color and texture approved by the architect, and recited that pavers which complied with the requirements of the specifications included, without being limited to, San Juan tile pavers manufactured by defendant.

There were delays in connection with the UTSA project, and it was not until August 31, 1973, that Compton, plaintiff's supervisor and estimator, telephoned Rogers, defendant's general manager, concerning the acquisition of the required tile, including the $8 \times 12$ pavers. During this conversation no mention was made of price or of time, place or method of delivery. On that same date, following the telephone conversation, Compton mailed to Rogers a document referred to by Compton as "a telephone confirmation purchase order," which referred to $4 \times 8$ pavers and $8 \times 12$ pavers, both of which sizes were required by plaintiff to fulfill its obligations under its contract with the general contractor. This instrument made no mention of price, or of the time, place or method of delivery.

There was no further communication between plaintiff and defendant until December 27, 1973, when defendant, by means of a letter signed by Rogers, informed plaintiff that production difficulties beyond defendant's control were making it extremely

difficult, if not impossible, to manufacture the 8 × 12 "San Juan pavers scheduled for [plaintiff's] P.O. 1471." In this letter Rogers stated that defendant was trying "alternate methods of procedure" which, if successful, would enable defendant to furnish the 8 × 12 pavers "within approximately 60 to 90 days." However, Rogers referred to the possibility of failure of the alternate methods.

Rogers assured plaintiff that defendant would be able to satisfy "the entire order" of the 4 × 8 pavers, and he recommended that plaintiff use additional 4 × 8 pavers in lieu of the 8 × 12 pavers. Although the letter ended with a request that plaintiff "please advise" defendant, plaintiff did not reply.

On February 25, 1974, defendant, again by means of a letter signed by Rogers, informed plaintiff that all efforts to produce the 8 × 12 pavers had been unsuccessful; but that defendant could produce 6 × 9 pavers which could be delivered within three weeks or less, if the architect approved the substitution of such smaller pavers for the 8 × 12 pavers.

Plaintiff submitted the samples of the 6 × 9 pavers to the architect because "there wasn't much choice," and arranged a meeting on April 17, 1974, at which plaintiff, defendant, the architect, the general contractor and a representative of UTSA were present. After some discussion, the architect approved the use of the smaller (6 × 9) pavers. Plaintiff pointed out that the use of the smaller pavers would increase the cost of the job, but the architect insisted that his use of the smaller pavers was approved only if there was no increase in the cost of the project. The architect reminded plaintiff that plaintiff's subcontract provided for liquidated damages for delay in the amount of $420.00 per day.

Plaintiff then purchased the smaller tile from defendant "under protest." The 6 × 9 pavers were sold and delivered by defendant to plaintiff in lieu of the larger pavers at prices prevailing on August 31, 1973, the date on which plaintiff had first contacted defendant by telephone. The August 31, 1973, price of the 6 × 9 pavers was $175.00 per thousand pieces. The 4 × 8 pavers required by plaintiff were also furnished by defendant on the basis of the August 31, 1973, price.

Because more of the 6 × 9 pieces were needed than would have been required if defendant had furnished the 8 × 12 pavers, based on August, 1973, prices, the total cost of the 6 × 9 pavers delivered by defendant exceeded by $2,699.12 the total cost of the larger pavers originally specified. The testimony reflects that, because the smaller pavers were used, additional labor expenses were incurred by plaintiff. The use of the smaller pavers resulted in a necessary increase in the number of "grout joints," requiring the use of almost 24,000 additional pounds of grout. The change to the smaller size resulted in more delays in the work. The testimony shows that such additional expenses are to be expected when there is a change to a tile of a smaller size; and there is testimony that the substitution resulted in additional expense to plaintiff, including the additional cost of the tile itself, totaling $12,362.78.

There is testimony that defendant had previously furnished 12 × 8 pavers, although in smaller quantities, in connection with some construction work at Trinity University, also located in San Antonio.

In answer to special issue no. 1, the jury found that on August 31, 1973, plaintiff and defendant had entered into an "agreement" that defendant would sell and deliver to plaintiff, and plaintiff would purchase from defendant, 61,000 square feet of 8 × 12 pavers. In answer to the second special issue the jury found that $11,000.00 would fairly compensate plaintiff for his damages resulting from the fact that defendant delivered 6 × 9 pavers rather than 8 × 12 pavers.

We will not consider those portions of defendant's brief which seek reversal because of defects in the court's charge to the jury. The complaints which defendant now presents to this Court were not called to the attention of the trial court by means of objection to the issues and instructions, nor

by requests for the submission of issues or instructions. The defects, if any, were waived by defendant. Tex.R.Civ.P. 274; *Texas Employers' Ins. Ass'n v. Neuman*, 379 S.W.2d 295, 296 (Tex.1964).

Defendant claims that the trial court should have granted its motion for instructed verdict and for judgment n. o. v. because: (1) there is no evidence that plaintiff entered into its contract with the general contractor in reliance upon any representation by defendant that defendant would furnish any of the products required for performance of the subcontract; (2) there is no evidence that plaintiff ever agreed to a price or date, method or place of delivery and that, as a consequence, there is no basis for holding that there was ever a contract between plaintiff and defendant for the sale and purchase of the tile pavers in question; (3) there is no evidence that plaintiff made any effort to secure the pavers from any other source; and (4) there is no evidence that the product in question could have been manufactured by defendant to the satisfaction of either plaintiff or defendant.

### 1. *Reliance*

We need not determine whether plaintiff relied on the previous quotation of prices by defendant in submitting its bid to the general contractor and entering into a contract to do the tile work in connection with the UTSA project. The judgment in favor of plaintiff in this case is based on the theory that plaintiff and defendant entered into a contract on August 31, 1973, and therefore, whether plaintiff incurred obligations in reliance on the prices quoted by defendant in May, 1972, is irrelevant.

### 2. *Existence of a Contract*

According to Section 2.204(c) of the Business and Commerce Code,[1] a contract of sale does not fail, even if one or more items are left open, if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy. Consistent with this policy, Section 2.305(a) permits the parties to conclude a contract for sale without settling on a specific price. Under Section 2.308(1), if the place of delivery is not specified, delivery shall be at seller's place of business. If the agreement does not specifically set forth the time for delivery, under Section 2.309(a) delivery shall be within a reasonable time. The only term which need appear in the agreement is that concerning the quantity of the goods being purchased and sold. § 2.201(b).

■ The evidence shows that defendant was familiar with the UTSA project. When plaintiff's estimator telephoned defendant with reference to the pavers, defendant's general manager expressed some doubt that the quantity referred to by plaintiff would be sufficient for the project, suggesting that a greater quantity would be required. The written confirmation sent to defendant by plaintiff on the same day, August 31, 1973, prompted no reply from defendant, and the testimony more than supports the conclusion that defendant began making preparations to supply plaintiff with the required pavers. Defendant's general manager testified that special items or nonstock items such as the pavers were not scheduled for production until firm purchase orders were received, and defendant's letter of December 27, 1973, shows that attempts to produce the pavers in question had been made by defendant. Such attempts at production continued at least through February 25, 1974. Additionally, defendant's general manager testified that his December and February letters to plaintiff were intended to "release" or "cancel" defendant's obligation to produce and deliver the 8 × 12 pavers. When we consider that all items furnished by defendant to plaintiff were furnished on the basis of the prices prevailing on August 31, 1973, the date of the telephone and written confirmation, it is clear that it may be fairly inferred from the surrounding circumstances that both parties considered the August 31, 1973, telephone conversation and confirmatory writing as creating a contract for the sale and purchase of 61,000 square feet of 8 × 12 pavers. *See* § 2.202.

1. Statutory references are to the corresponding sections of Tex.Bus. & Com.Code Ann. (1968).

*Farley v. Clark Equipment Co.*, 484 S.W.2d 142 (Tex.Civ.App.—Amarillo 1972, writ ref'd n. r. e.), relied on by defendant, is not in point. That case merely held that the quotation of a price by the seller, followed by the prospective buyer's tender of a payment which is less than the quoted price, does not evidence the existence of any agreement between the parties.

Since the judgment is based on the existence of a contract entered into on August 31, 1973, and on the prices prevailing on that date rather than on the prospectus circulated by defendant in May, 1972, Section 2.205, which provides that a firm written offer shall be irrevocable for a reasonable time, not exceeding three months, is inapplicable. Since there is no evidence in this case that the parties intended that the binding nature of the agreement was based on an understanding that the parties would reach a later agreement as to price, Section 2.305(d) is irrelevant. The binding rule is that embodied in Section 2.305(a), which permits the finding of a binding contract even in the absence of a specific provision as to price.

Defendant also relies on Section 2.207, which deals with the effect of additional terms contained in an acceptance or confirmation of a proposed agreement. Defendant contends that its letters of December, 1973, and February, 1974, describing defendant's difficulties in producing the 8 × 12 pavers, constituted a modification of the existing contract, and that such proposed modifications were binding on plaintiff because of plaintiff's failure to object. Defendant overlooks the fact that, as provided in Section 2.207(a), such provision concerning modifications is applicable only in the case of "a seasonable expression of acceptance" or written confirmation sent "within a reasonable time." We cannot hold that an attempted modification sent almost four months after conclusion of the agreement constitutes, as a matter of law, a modification reasonable or seasonable in time.

### 3. *Failure to Mitigate*

■ With reference to defendant's complaint that plaintiff failed to make efforts to obtain the needed pavers from other sources, it must be noted that defendant did not communicate to plaintiff any final and definitive statement of defendant's inability to fulfill the order until February 25, 1974, and that plaintiff then arranged a meeting to resolve the problem. The testimony in this case does no more than indicate that it was theoretically conceivable that another manufacturer could produce the required pavers. Other testimony establishes that no other manufacturer was producing the 8 × 12 tiles at that time, and plaintiff's expert testified, without contradiction, that no other manufacturer has successfully produced the 8 × 12 pavers in the past. Even if we reject plaintiff's contention that it attempted under protest to mitigate damages by substituting the 6 × 9 pavers for the 8 × 12 pavers, the evidence supports the conclusion that plaintiff had not failed to make reasonable efforts to mitigate its damages. The jury was properly instructed concerning plaintiff's duty to attempt to mitigate its damages.

### 4. *Impossibility*

■ Defendant's argument that it was impossible for it to perform its obligation under the contract is an interesting contention in view of evidence establishing that defendant had in the past successfully manufactured the 8 × 12 pavers used on another job. The evidence does not indicate that the manufacture of the pavers in question was impossible. At best, the record supports only the conclusion that it would have been economically burdensome to defendant to fulfill its obligations under the contract. A contractual obligation cannot be avoided simply because the obligor's performance has become more burdensome than he anticipated. *Mahrer v. Mahrer*, 510 S.W.2d 402, 405 (Tex.Civ.App.—Dallas 1974, no writ). The evidence falls far short of establishing, as a matter of law, impossibility of performance.

Defendant's final contention is that there is insufficient evidence to support the jury's award of $11,000.00 as damages.

As already indicated, plaintiff presented a specific breakdown of the damages which resulted to plaintiff because of defendant's failure to deliver the 8 × 12 pavers. There was testimony as to each item of damages claimed and an explanation of the monetary amount attributable to each item. Such evidence was direct and positive, and even if there be contrary evidence, it cannot be said that the contrary evidence is so overwhelming, or that the supportive evidence is so insignificant as to compel the conclusion that the jury's answer is not based on sufficient testimony. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1963); *Kulms v. Jenkins*, 557 S.W.2d 149 (Tex.Civ.App.—Amarillo 1973, writ ref'd n. r. e.).

The judgment of the trial court is affirmed.