**1464–EIGHT, LTD. & Millis Management Corporation, Petitioners,**

v.

**Gail Ann JOPPICH, Respondent.**

**No. 03–0109.**

Supreme Court of Texas.

Argued Jan. 28, 2004.

Decided Dec. 31, 2004.

---

Robert B. Gilbreath, Jenkens & Gilchrist, Dallas, Christopher M. Brown, Jenkens & Gilchrist, Houston, for Petitioner.

G.P. Matherne, Houston, for Respondent.

Justice SMITH delivered the opinion of the Court, in which Justice HECHT, Justice OWEN, Justice O'NEILL, Justice WAINWRIGHT, and Justice MEDINA joined.

STEVEN WAYNE SMITH, Justice.

The question presented is whether section 87(1)(a) of the Restatement (Second) of Contracts should be incorporated into the common law of Texas. *See* 3 Williston & Lord, A Treatise on the Law of Contracts § 7:23 (4th ed. 1992) ("As far as option contracts are concerned, the Restatement (Second) has taken the position, adopted by some common law courts, that a false recital of nominal consideration is sufficient to support the irrevocability of an offer so long as the underlying exchange is fair and the offer is to be accepted within a reasonable time.").

The petitioners, citing section 87(1)(a) of the Restatement (Second) of Contracts, assert that the respondent's offer to sell real property should be binding as an option contract because the offer was in writing and signed by the respondent, acknowledged the receipt of a nominal consideration of ten dollars, and proposed an exchange on fair terms within a reasonable time. The respondent, contending that the parties' written option agreement is unenforceable, asserts that the agreement lacks consideration because the recited nominal consideration was never actually paid, and that the offer was revoked before it was properly accepted.

In this case of first impression, we agree with the petitioners that the nonpayment of the recited nominal consideration does not preclude enforcement of the parties' written option agreement. Therefore, we will reverse and remand.

## I

In July 1997, Gail Ann Joppich entered into an earnest money contract with 1464–Eight, Ltd. and Millis Management Corporation (collectively "Millis") under which Joppich agreed to buy, and Millis agreed

to convey, an undeveloped residential lot located in a subdivision being developed by Millis. The purchase price was $65,000. An addendum attached to the earnest money contract provided:

All Lots being sold in Shiloh Lake Estates Subdivision are being sold pursuant to an Option Agreement to be executed by Buyer and Seller at closing that shall survive closing and provide Seller with an option to purchase the Property from the Buyer at a price equal to 90% of the sale price herein if Buyer fails to commence construction of a private residence on the Property within 18 months from the date of closing.

At the closing later the same month, Millis executed a special warranty deed conveying the lot to Joppich. In addition, the parties executed a separate four-page document entitled "Option Agreement." The notarized document, which was signed by both Joppich and Millis, provided:

1. *Grant of Option.* In consideration of the sum of Ten and No/100 ($10.00) Dollars ("Option Fee") paid in cash by Developer, the receipt and sufficiency of which is hereby acknowledged and confessed, Purchaser hereby grants to Developer the exclusive right and option to purchase [the Property]. This Option may be exercised at any time from and after January 21, 1999.

2. *Purchase Price.* The total purchase price for the Property shall be [$58,500] and shall be due and payable at closing.

3. *Expiration Date.* This Option shall automatically expire at 5:00 o'clock p.m. on the date which is five (5) years after the date of execution and recording in the Office of the County Clerk of Fort Bend County, Texas unless prior to the expiration date this Option is exercised by Developer.

4. *Termination.* This Option shall automatically terminate on the date that Purchaser, or Purchaser's assigns, commence construction of a primary residence which has been approved by [the appropriate committee].

The Option Agreement did not contain an express statement regarding whether the parties intended the offer to sell real property to be revocable or irrevocable.

In October 1999, Joppich filed suit against Millis, seeking a declaratory judgment that the Option Agreement was unenforceable. In her original petition, Joppich asserted that "[a]lthough the Option Agreement states that a sum of Ten and No/100 dollars was given to Plaintiff in consideration for granting the option, this sum was not then nor has it ever been tendered to nor paid to Plaintiff," and she requested that "the Court declare that the Agreement granting the exclusive right and option to purchase [the Property] to the Developer is void and unenforceable for lack of consideration or alternatively, failure of consideration." Millis answered with a general denial.

In September 2000, Millis filed a counterclaim seeking specific performance, damages, and attorney's fees, asserting:

Counter Defendant failed to begin construction of a primary residence on the property, therefore, Counter Plaintiffs sent notice of their exercising of the option to Counter Defendant on September 4, 1999.... Counter Defendant refused and continues to refuse to convey the property pursuant to the terms of the option.

Joppich answered with a general denial. In addition, in compliance with Texas Rules of Civil Procedure 93 and 94, the answer was verified by affidavit and set forth the affirmative defenses of lack of consideration and failure of consideration.

In January 2001, Joppich moved for final summary judgment "based on failure and/or lack of consideration." Joppich asserted that "[s]ince no consideration flowed from Defendants to Plaintiff and she revoked the Option Agreement before consideration had in fact passed, the Option Agreement is void and unenforceable." In her affidavit, which was attached to the motion, Joppich stated: "The Option Agreement states that a sum of Ten and No/100 dollars was given to me in consideration for granting Defendants the right to repurchase the property under certain conditions. This sum was not then nor has it ever been tendered to or paid to me."

Millis responded to Joppich's motion and, in the same document, moved for partial summary judgment. Millis asserted:

At the closing, Plaintiff acknowledged the receipt of ten dollars by signing the Option Agreement. She did not mention to anyone before or after signing the agreement that she had not actually received the ten dollars. Texas case law is clear that this option is supported by adequate consideration and at most, Plaintiff's alleged failure to actually receive the recited consideration creates nothing more than a right to payment of the stated sum.

In support of the motion for partial summary judgment, Millis attached the Option Agreement. Millis proffered no additional summary judgment evidence regarding whether the recited nominal consideration of ten dollars was actually paid. In the motion, Millis requested only a declaration that the Option Agreement was enforceable.

In February 2001, the trial court denied Joppich's motion for final summary judgment and granted Millis's motion for partial summary judgment. In May 2001, the trial court rendered a final judgment declaring that the Option Agreement was enforceable, requiring Joppich to sell the property in compliance with the terms of the Option Agreement, and awarding attorney's fees to Millis.

In the court of appeals, both sides characterized the consideration recited in the Option Agreement as "nominal." Millis, relying on *McKay v. Tally*, 220 S.W. 167 (Tex.Civ.App.Amarillo 1920, no writ) and *Heard v. Pratt*, 257 S.W. 660 (Tex.Civ.App. San Antonio 1923, writ dism'd), asserted:

Where a contract recites the payment of a nominal amount of money as its consideration, the contract is valid, even if the nominal sum identified is not actually paid. The nominal consideration merely creates an obligation to pay such sum, which may be enforced by the other party. The real consideration provided in the Option Agreement was the obligation to pay the ten dollars, and it is of no consequence whether the ten dollars was paid or not.

Joppich acknowledged that "[i]f unpaid nominal consideration without other consideration is sufficient, then the court should overrule [her first issue] challenging the enforceability of a contract for failure or lack of consideration." Neither Millis nor Joppich cited or otherwise discussed section 87(1)(a) of the Restatement (Second) of Contracts.

In December 2002, the court of appeals reversed and remanded, concluding that "summary judgment for [Millis] was improper." 96 S.W.3d 614, 617.[1] Because it

---

1. In the trial court, Millis made only one argument in support of its motion for partial summary judgment: "The real consideration in this case was the obligation to pay the ten dollars and it is of no consequence whether the ten dollars was paid or not." In response to Joppich's motion for final summary judgment, Millis argued: "At this point in time,

sustained her first issue, the court of appeals did not address Joppich's other issues. *Id.*

In this Court, Millis asserts that "[t]he court of appeals' holding that failure to deliver the nominal consideration recited in an option contract precludes its enforcement directly conflicts with the modern view reflected in the Restatement (Second) of Contracts." In response, Joppich argues that "[t]he Restatement shows that its view is not the modern view but is in fact the minority view consisting of one and possibly two states." Joppich does not dispute Millis's contention, made in both its petition for review and its brief on the merits, that the Option Agreement satisfies section 87(1)(a) of the Restatement (Second) of Contracts, including its requirement that an offer propose an exchange on fair terms within a reasonable time.

## II

"[A] promise to give an option is valid if supported by an independent con-

there still remain genuine issues of material fact as to what consideration was actually given for the Option Agreement. Defendants contend that Plaintiff did not only sign the Option Agreement for the right to receive ten dollars, but also signed it in consideration for the right to purchase the property."

The court of appeals, in one paragraph, addressed and rejected Millis's appellate argument that "the property itself, which was the consideration exchanged under the earnest money contract, serves as additional consideration for the option granted within it." 96 S.W.3d at 617. With regard to that argument, the court of appeals stated: "Based on the merger doctrine, the earnest money contract was superseded by agreements executed at closing. *Alvarado v. Bolton,* 749 S.W.2d 47, 48 (Tex.1988). At closing, the parties executed the option contract, which recited, 'In consideration of the sum of Ten and No/ 100 ($10.00) Dollars.' Therefore, the option contract did not mention any 'other good and valuable consideration,' such as the property itself." *Id.*

sideration. For example, if a sum of money be paid for the option, the promisee may, at his election, enforce the contract." *Nat'l Oil & Pipe Line Co. v. Teel,* 95 Tex. 586, 68 S.W. 979, 980 (1902); *see also* Restatement (Second) of Contracts § 25 (1981) ("An option contract is a promise which meets the requirements for the formation of a contract and limits the promisor's power to revoke an offer.").

In addition, under the Restatement (Second) of Contracts, certain promises that lack consideration are enforceable. *See* Restatement (Second) of Contracts §§ 82–94 (1981); *see also* 1 Murray, Murray on Contracts § 61 (4th ed. 2001) ("The *Restatement 2d* expressly adopts the view that a clause reciting nominal consideration in either a guaranty or an option contract should operate as a formalistic validation device, supporting the promise in either type of contract, regardless of the fact that the recited amount was never paid."); 2 Perillo & Bender, Corbin on

Because it was not raised in Millis's motion for partial summary judgment, the argument that the property itself constitutes consideration for the parties' written option agreement should not have been considered by the court of appeals. Moreover, the court of appeals's three-sentence analysis lacks clarity, and appears to improperly construe and apply the applicable Texas law. *See, e.g., Fort Worth Indep. Sch. Dist. v. City of Fort Worth,* 22 S.W.3d 831, 840 (Tex.2000) ("[I]nstruments pertaining to the same transaction may be read together to ascertain the parties' intent, even if the parties executed the instruments at different times and the instruments do not expressly refer to each other ....") (citations omitted); *Harris v. Rowe,* 593 S.W.2d 303, 306–07 (Tex.1979) ("A deed which constitutes only partial performance of the preceding contract does not merge other distinct and unperformed provisions of the contract."). Accordingly, we specifically disapprove of that portion of the court of appeals's opinion.

Contracts § 5.17 (rev. ed. 1995) ("The Restatement (Second) has taken the position that in the commercially important situations of options and credit guaranties, a promise is made binding by a false recital of consideration.").

Section 87(1)(a) of the Restatement (Second) of Contracts provides: "An offer is binding as an option contract" if the offer "is in writing and signed by the offeror, recites a purported consideration for the making of the offer, and proposes an exchange on fair terms within a reasonable time." Restatement (Second) of Contracts § 87(1)(a) (1981). Similarly, section 88(a) provides: "A promise to be surety for the performance of a contractual obligation, made to the obligee, is binding" if the promise "is in writing and signed by the promisor and recites a purported consideration." *Id.* § 88(a); *see also Beltran v. Groos Bank, N.A.*, 755 S.W.2d 944, 948 (Tex.App.San Antonio 1988, no writ) (applying section 88(a) to determine whether a written guaranty agreement that contained a fictional recital of a nominal consideration was enforceable).

In the remainder of part II, we will review two United States Supreme Court decisions from the 1800's and several Texas court decisions from the early 1900's before more closely analyzing section 87(1)(a) of the Restatement (Second) of Contracts.

### A

In 1844, the United States Supreme Court addressed whether a written guaranty agreement that contained a fictional recital of a nominal consideration was enforceable:

The fifth point is, that there is no valid consideration to support the guarantee. This is pressed under two aspects; the first is, that the consideration was past and not present; for the letter of credit had been already delivered to J. and A. Lawrence by the agents of the London house. The second is, that the payment of the one dollar is merely nominal and not sufficient to sustain the guarantee, if it had been received; and it is urged that it was not received. As to this last point, we feel no difficulty. The guarantor acknowledged the receipt of the one dollar, and is now estopped to deny it. If she has not received it, she would now be entitled to recover it. A valuable consideration, however small or nominal, if given or stipulated for in good faith, is in the absence of fraud, sufficient to support an action on any parol contract; and this is equally true as to contracts of guarantee as to other contracts. A stipulation in consideration of one dollar is just as effectual and valuable a consideration as a larger sum stipulated for or paid. . . .

*Lawrence v. McCalmont*, 43 U.S. (2 How.) 426, 452, 11 L.Ed. 326 (1844).

In 1881, the United States Supreme Court relied on *Lawrence* to resolve another case involving a written guaranty agreement. *Davis v. Wells*, 104 U.S. 159, 167–68, 26 L.Ed. 686 (1881). The agreement in *Davis* stated: " 'For and in consideration of one dollar to us in hand paid by Wells, Fargo, & Co. (the receipt of which is hereby acknowledged), we hereby guarantee. . . .' " *Id.* at 160, 26 L.Ed. 686. In concluding that the agreement was enforceable, the Supreme Court stated:

It is not material that the expressed consideration is nominal. That point was made, as to a guarantee, substantially the same as this, in the case of *Lawrence v. McCalmont* (2 How. 426, 452, 11 L.Ed. 326), and was overruled. Mr. Justice Story said: "The guarantor acknowledged the receipt of the one dollar, and is now estopped to deny it. If she has not received it, she would now

be entitled to recover it. A valuable consideration, however small or nominal, if given or stipulated for in good faith, is, in the absence of fraud, sufficient to support an action on any parol contract; and this is equally true as to contracts of guaranty as to other contracts. A stipulation in consideration of one dollar is just as effectual and valuable a consideration as a larger sum stipulated for or paid...."

*Id.* at 167–68, 26 L.Ed. 686.

In 1902, this Court, in a suit to cancel two oil and gas contracts, assumed without deciding that the recital of a nominal consideration was sufficient to support an option contract:

Each of the contracts in this case purports upon its face to have been executed in consideration of the payment of one dollar; and, though the plaintiff below pleaded that no consideration was paid, there was no evidence that the recitals as to the consideration in the contracts were not true. Whether the recital of "one dollar"—commonly called a nominal consideration—is sufficient to support the contracts, we need not discuss, though there is very high authority for holding that such recital is sufficient for the purpose. Davis v. Wells, 104 U.S. 159, 26 L.Ed. 686. Treating the contracts as if supported by a consideration, the question recurs, can the assignee of such a contract, or the vendee of the right secured by it, shield himself against the fraud of his assignor in its procurement by showing that he is a purchaser for value, without notice of the fraud?

*Nat'l Oil & Pipe Line Co. v. Teel,* 68 S.W. at 980.

In March 1920, the Amarillo Court of Civil Appeals, in a suit to cancel an oil and gas contract, discussed in dictum the effect of a fictional recital of a nominal consideration:

The question is also presented by this record that the recitation that $1 was paid as a consideration creates an obligation to pay, if in fact it was not actually paid. It seems, under some of the authorities, such would be an obligation to pay, which may be enforced and will support a contract to lease or convey an interest in land.

"Where a contract recites the payment of $1 as its consideration, it is valid, although the sum named is not actually paid, since it creates an obligation to pay such sum, which may be enforced by the other party." 13 C.J. § 240, "Contracts," p. 367.

*McKay v. Tally,* 220 S.W. 167, 169–70 (Tex.Civ.App.Amarillo 1920, no writ).

In June 1920, the Commission of Appeals considered whether a written release that contained a fictional recital of a nominal consideration was enforceable. *Fitts v. Panhandle & S.F. Ry. Co.,* 222 S.W. 158, 158 (Tex. Comm'n App.1920, judgm't adopted). The release recited the following consideration: " 'An order on the treasurer of said company for $1, the receipt of which is hereby acknowledged,' and 'the promise of said company to employ me for one day....' " *Id.*

In concluding that the release was unenforceable, the Commission of Appeals stated:

We have the views of the Supreme Court upon the question thus presented, expressed in the following language:

"Since the recited consideration of $1 in the release in this case was not paid, it is our opinion that the release was wholly without consideration. It seems to us that a mere promise to re-employ for one day, paying for the work done for that one day no more than the ordinary or customary rate of wages, conferred,

in practical effect, no benefit upon the plaintiff. . . ."

*Id.* The opinion did not provide a citation for the quotation attributed to this Court. Our historical research of the case file and related journals at the State Archives and an electronic legal search failed to reveal the source of the quotation.

In 1922, the El Paso Court of Civil Appeals, in a suit to cancel an oil and gas contract, summarily concluded that a fictional recital of a nominal consideration precluded enforcement of the contract, stating: "A unilateral contract is valid if supported by an independent consideration, but the testimony of plaintiffs is that the independent consideration of $1 cash recited in this lease was not in fact paid. . . ." *Gary v. McKinney,* 239 S.W. 283, 286 (Tex.Civ.App.El Paso 1922, no writ). In 1924, the Waco Court of Civil Appeals, in a similar case, reached the opposite conclusion:

> The consideration named in the lease was sufficient to make a binding contract, whether the $1 named was paid or not. If same was not paid, [the lessor] would have a claim against the company for same. *Masterson v. Amarillo Oil Co.* (Tex.Civ.App.) 253 S.W. 908; *McKay v. Tally* (Tex.Civ.App.) 220 S.W. 167; *Bost v. Biggers Bros.* (Tex.Civ. App.) 222 S.W. 1112.

*Silverman v. Emerson,* 257 S.W. 612, 613 (Tex.Civ.App.Waco 1924, no writ). Neither court of civil appeals discussed the Commission of Appeals's *Fitts* decision.

Before the court of appeals's decision in this case, no Texas appellate court had decided whether a written option agreement that contains a fictional recital of a nominal consideration is unenforceable for lack of consideration.

**B**

Section 87(1) of the Restatement (Second) of Contracts provides:

(1) An offer is binding as an option contract if it

(a) is in writing and signed by the offeror, recites a purported consideration for the making of the offer, and proposes an exchange on fair terms within a reasonable time; or

(b) is made irrevocable by statute.

Restatement (Second) of Contracts § 87(1) (1981).

The official comment to section 87 states:

*b. Nominal consideration.* Offers made in consideration of one dollar paid or promised are often irrevocable under Subsection (1)(a). . . .

[A] nominal consideration is regularly held sufficient to support a short-time option proposing an exchange on fair terms. The fact that the option is an appropriate preliminary step in the conclusion of a socially useful transaction provides a sufficient substantive basis for enforcement, and a signed writing taking a form appropriate to a bargain satisfies the desiderata of form. In the absence of statute, however, the bargaining form is essential: a payment of one dollar by each party to the other is so obviously not a bargaining transaction that it does not provide even the form of an exchange.

*c. False recital of nominal consideration.* A recital in a written agreement that a stated consideration has been given is evidence of that fact as against a party to the agreement, but such a recital may ordinarily be contradicted by evidence that no such consideration was given or expected. See § 218. In cases within Subsection (1)(a), however, the giving and recital of nominal consider-

ation performs a formal function only. The signed writing has vital significance as a formality, while the ceremonial manual delivery of a dollar or a pepper-corn is an inconsequential formality. In view of the dangers of permitting a solemn written agreement to be invalidated by oral testimony which is easily fabricated, therefore, the option agreement is not invalidated by proof that the recited consideration was not in fact given. A fictitious rationalization has sometimes been used for this rule: acceptance of delivery of the written instrument conclusively imports a promise to make good the recital, it is said, and that promise furnishes consideration. Compare § 218. But the sound basis for the rule is that stated above.

*Id.* § 87 cmts. b-c (illustrations omitted).

The illustration following comment c states:

3. A executes and delivers to B a written agreement "in consideration of one dollar in hand paid" giving B an option to buy described land belonging to A for $15,000, the option to expire at noon six days later. The fact that the dollar is not in fact paid does not prevent the offer from being irrevocable.

*Id.* § 87 cmt. c, illus. 3.

The authors of the national treatises on contracts have generally endorsed section 87(1)(a) of the Restatement (Second) of Contracts. For example, *Corbin on Contracts* states:

But, even when the dollar was not paid, the option has been sustained. Some courts have estopped the promisor from denying that the dollar was paid. Others have sustained the option by virtue of an implied promise to pay the dollar. The Restatement (Second) carves out two important areas in which the results of these cases [are] duplicated. It makes recital of "a purported" consider-

ation in a signed writing sufficient to bind the promisor in the following two categories of cases: a credit guaranty promise and an option contract. . . .

Unlike the cases mentioned above, the Restatement (Second) does not attempt to obscure its reasoning behind such legal sleights of hand as implied promises and estoppels, but has synthesized those cases into a new doctrine, categorizing guaranty and option contracts—where the formal requisites are met—as enforceable contracts without consideration. The reason for giving special treatment to options and guaranties is their presumptive utility as ancillaries to bargain transactions. . . .

Consideration is designed primarily to protect promisors from their own donative promises. Options, however, are one commercial step in a commercial deal. A number of cases have followed the forthright approach taken by the Restatement (Second). Indeed, it may be urged that the Restatement fails to lead the way to more progressive reform. Having recognized the value of the enforceability of options as commercial devices, it still insists on the fictional recital of a purported consideration. Such fictional charades should not be a part of a mature legal system. Commercial promises such as options and credit guaranties should be enforceable without consideration.

2 Perillo & Bender, Corbin on Contracts § 5.17 (rev. ed.1995) (footnotes omitted); *see also* 1 Farnsworth, Farnsworth on Contracts § 3.23 (3d ed. 2004) ("The attempt is to make a recital of consideration as effective a formality as was the seal, where options are concerned."); 1 Murray, Murray on Contracts § 61 (4th ed. 2001) ("Notwithstanding the compelling view of the *Restatement 2d,* however, most courts hold that, upon proof that the recited

amount has not been paid, the promise fails for want of consideration."); 3 Williston & Lord, A Treatise on the Law of Contracts § 7:23 (4th ed. 1992) ("[T]he drafters ... have recognized that in the context of option contracts the formal recital of consideration, though false and nominal only, serves the useful purpose of facilitating the underlying bargain.").

In addition, the authors of law review commentary have agreed that the nonpayment of a recited nominal consideration should not preclude enforcement of a written option agreement. *See* Siprut, Comment, *The Peppercorn Reconsidered: Why a Promise to Sell Blackacre for Nominal Consideration Is Not Binding, but Should Be,* 97 Nw. U.L.Rev. 1809 (2003); Wessman, *Retraining the Gatekeeper: Further Reflections on the Doctrine of Consideration,* 29 Loy. L.A. L.Rev. 713 (1996); Gordon, *Consideration and the Commercial–Gift Dichotomy,* 44 Vand. L.Rev. 283 (1991); Eisenberg, Symposium, *The Principles of Consideration,* 67 Cornell L.Rev. 640 (1982).

### III

The position taken by section 87(1)(a) of the Restatement (Second) of Contracts is admittedly the minority position among the limited number of state supreme courts that have addressed the question. *See, e.g., Lewis v. Fletcher,* 101 Idaho 530, 617 P.2d 834, 835 (1980) (holding that a written option agreement that contains a fictional recital of a nominal consideration is unenforceable for lack of consideration); *Berryman v. Kmoch,* 221 Kan. 304, 559 P.2d 790, 793 (1977) (same); *Am. Handkerchief v. Frannat Realty Co.,* 17 N.J. 12, 109 A.2d 793, 796–97 (1954) (same); *Bard v. Kent,* 19 Cal.2d 449, 122 P.2d 8, 10 (1942) (same); *Kay v. Spencer,* 213 P. 571, 574, 29 Wyo. 382 (1923) (same); *Smith v. Wheeler,* 233 Ga. 166, 210 S.E.2d 702, 704 (1974) (implying an obligation to pay the

recited but unpaid nominal consideration); *Real Estate Co. v. Rudolph,* 301 Pa. 502, 153 A. 438, 439 (1930) (employing an estoppel theory to prevent contradiction of a fictional recital of a nominal consideration).

■ Nevertheless, we are persuaded that the position of the Restatement (Second) of Contracts, which is supported by a well-articulated and sound rationale, represents the better approach. *See, e.g.,* Restatement (Second) of Contracts § 87 cmt. b (1981) ("The fact that the option is an appropriate preliminary step in the conclusion of a socially useful transaction provides a sufficient substantive basis for enforcement, and a signed writing taking a form appropriate to a bargain satisfies the desiderata of form."); Gordon, *Consideration and the Commercial–Gift Dichotomy,* 44 Vand. L.Rev. 283, 293–94 (1991) ("Option contracts are related to economic exchanges—transactions based on self-interest, not altruism. Moreover, people expect that option contracts are serious and binding commitments.") (footnote omitted).

### IV

Based on the foregoing analysis, we reverse the court of appeals's judgment and remand the case to the court of appeals for further proceedings.

Chief Justice JEFFERSON filed a concurring opinion, in which Justice BRISTER joined.

Chief Justice JEFFERSON, joined by Justice BRISTER, concurring.

Today the Court adopts section 87(1)(a) of the Restatement (Second) of Contracts to hold that an option contract in which consideration is recited, but not paid, is enforceable. But if the Court enforces option contracts containing fictional recitals of consideration, why mandate such

recitals at all? Why recognize and require parties to recite "a lie, a sham"? James D. Gordon III, *Consideration and the Commercial–Gift Dichotomy*, 44 Vand. L.Rev. 283, 294 (1991) (commenting on section 87 of the Restatement (Second) of Contracts); *see also* John P. Dawson, Gifts and Promises 4 (1980) (criticizing consideration requirement as a "needless hindrance to the processes by which agreement is reached and, being artificial as well as needless, was soon made to look silly, so that a dollar, a hairpin, or a false recital would do").

Instead, I agree with the authors of a leading treatise that while the Restatement approach is a step in the right direction, it "fails to lead the way to more progressive reform. Having recognized the value of the enforceability of options as commercial devices, it still insists on the fictional recital of a purported consideration. Such fictional charades should not be part of a mature legal system. Commercial promises such as options and credit guaranties should be enforceable without consideration." 2 Joseph M. Perillo & Helen Hadjiyannakis Bender, Corbin on Contracts § 5.17 (rev. ed.1995) (footnote omitted); *see also id.* § 5.17 n. 19 (noting that "undue deference is being paid to fictional recitals and the appropriate solution is that options should not require consideration").[1] Although I am not prepared to advocate elimination of the consideration requirement in all commercial contracts, I believe it is time to acknowledge that the doctrine serves no justifiable purpose in option agreements.

Typically, courts require consideration to separate binding agreements from unenforceable donative promises. *See id.* § 5.17 (rev. ed.1995). But option contracts rarely involve gifts. Generally, options "are one commercial step in a commercial deal." *Id.; see also* Gordon, 44 Vand. L.Rev. at 294 ("Offerors typically do not grant options because they intend to make a gift of the option. The offeror usually grants it to induce the offeree to deliberate and to increase the probability that the offeree will accept the offer.") (footnote omitted); Melvin Aron Eisenberg, *The Principles of Consideration*, 67 Cornell L.Rev. 640, 653 (1982) (noting that U.C.C. firm offers are made "not for altruistic motives, but to advance the offeror's interests by inducing the offeree to deliberate"). They "are related to economic exchanges—transactions based on self-interest, not altruism." Gordon, 44 Vand. L.Rev. at 294. Additionally, there is no reason to assume that an option unsupported by consideration is a gift; if the proposed terms are very favorable to the optionor, that alone may justify the option.

Moreover, enforcing option agreements even without consideration comports with the parties' expectations. "[P]eople expect that option contracts are serious and binding commitments." Gordon, 44 Vand. L.Rev. at 294. We can safely presume that was the case here. Millis and Joppich entered into a detailed, four-page option

---

1. Yet another problem with the Restatement approach is that, in addition to mandating a recital of consideration, the Restatement requires that an option be "on fair terms" and that the exchange occur "within a reasonable time." Restatement (Second) of Contracts § 87(1)(a) (1981). This approach unduly complicates enforcement of option contracts, requiring a factual inquiry regarding fairness of terms and reasonableness of time in each case. *See* Gordon, 44 Vand. L.Rev. at 294 ("Requiring that the option be in a certain form is too narrow because it relieves people of option contracts that everyone expects to be binding."). Perhaps this explains why, as the Court notes, "the Restatement ... is admittedly the minority position among the limited number of state supreme courts that have addressed the question." 154 S.W.3d at 110.

agreement, which was signed and notarized. It expressed the parties' intent to be bound. It was incident to Joppich's purchase of the lot for $65,000. Joppich agreed to begin construction within eighteen months. The option included the familiar refrain, "[i]n consideration of the sum of Ten and No/100 ($10.00) Dollars ("Option Fee") paid in cash by Developer, the receipt and sufficiency of which is hereby acknowledged and confessed," something the parties likely paid little attention to, until Joppich sought a means to avoid her promise. I agree with the Court that the option should be enforced even though Millis did not actually pay the recited ten dollars. But we should go further and dispense with that recital requirement in option contracts.

This view is hardly novel. For centuries, commentators and courts have advocated the elimination of the consideration requirement from contracts altogether. In eighteenth-century England, Lord Mansfield, Chief Judge of the King's Bench from 1756 through 1788, urged the enforcement of commercial contracts based on moral obligation rather than consideration. Kevin M. Teeven, *Development of Reform of the Preexisting Duty Rule and Its Persistent Survival*, 47 Ala. L.Rev. 387, 401 n. 76 (1996). But "the force of precedent surrounding this keystone common law doctrine proved too much to overcome," and the requirement remained a part of the common law. *Id.* at 441 n. 314.

In 1925, the National Conference of Commissioners on Uniform State Laws proposed the Uniform Written Obligations Act, drafted by Samuel Williston. Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings 193–215 (1925); Teeven, 47 Ala. L.Rev. at 439 (1996); Anthony J. Petrone, *Pennsylvania's Experience with the*

*Uniform Written Obligations Act: Saving Contracts Otherwise Unenforceable for Lack of Consideration*, 90 Com. L.J. 571, 572 (1985). That act eliminated consideration as a technical requirement for an enforceable contract. The act provides that "[a] written release or promise hereafter made and signed by the person releasing or promising shall not be invalid or unenforceable for lack of consideration, if the writing also contains an additional express statement, in any form of language, that the signer intends to be legally bound." Unif. Written Obligations Act § 1, Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings 584 (1925). The act's "drastic" [2] approach was not widely accepted, however; only Pennsylvania and Utah adopted the act, and Utah subsequently repealed it. Teeven, 47 Ala. L.Rev. at 439.

Instead, courts' dogged insistence on a formalistic recital remains, tempered only by the creative doctrines they employ to enforce option contracts when the stated consideration is not paid. Thus, "courts have invoked estoppels, promissory and equitable, and have implied promises to save options from the destructive force of the exaggerated impact of consideration doctrine." Perillo & Bender, Corbin on Contracts § 5.17 (noting that "[s]ome courts have estopped the promisor from denying that the [stated consideration] was paid" and "[o]thers have sustained the option by virtue of an implied promise to pay the dollar") (footnotes omitted). Instead of engaging in these machinations, courts should take a simpler, more straightforward approach and eliminate the consideration requirement in option contracts.

"Because the consideration requirement [for option contracts] has been imposed by the courts as a matter of common law, the

**2.** Petrone, 90 Com. L.J. at 572.

courts are free to discard this requirement. Because courts have traditionally been unwilling to take this needed step, legislators have stepped in in some jurisdictions and enacted curative legislation." Perillo & Bender, Corbin on Contracts § 5.17; *see also* Teeven, 47 Ala. L.Rev. at 441 n. 314 ("Consideration is not required for the formation of a commercial contract under any legal system other than the common law."). Perhaps this explains the Uniform Commercial Code's "firm offer" rule, adopted verbatim in Texas in 1966.[3] *See* Tex. Bus. & Com.Code § 2.205. Section 2.205 eliminates the consideration requirement for some option agreements by sanctioning "firm offers"—enforceable option contracts without any consideration. *Id.* Under the U.C.C., a "firm offer" is enforceable if it is in writing, states that it is irrevocable, and is signed by the offeror, who is a merchant.[4] *Id.* "Firm offers" are "not revocable, for lack of consideration" during the stated time—or, if no time is stated, a reasonable time—not to exceed three months. *Id.* Section 2.205 applies only to transactions in goods, however. *Id.* §§ 2.102, 2.205. The U.C.C. "firm offer" rule was promulgated to give the business community a means of making options binding even without consideration.

1 William D. Hawkland, Uniform Commercial Code Series § 2–205:1 (1998)(noting that pre-Code law permitted a businessperson to revoke an offer in spite of a promise not to do so if the promise to keep the offer open was not supported by consideration and "[t]he commercial community needed legislation to make firm offers efficacious"). Despite eliminating the consideration requirement, section 2.205 does not seem to have spawned much litigation, having been mentioned in just five published decisions since the Texas Legislature adopted it thirty-eight years ago.[5] *See Tubelite v. Risica & Sons, Inc.,* 819 S.W.2d 801, 803 (Tex.1991); *Nelson v. Union Equity Co–operative Exchange,* 548 S.W.2d 352, 356 (Tex.1977); *Traco, Inc. v. Arrow Glass Co.,* 814 S.W.2d 186, 188 (Tex.App.-San Antonio 1991, writ denied); *Alamo Clay Prods., Inc. v. Gunn Tile Co.,* 597 S.W.2d 388, 392 (Tex.Civ.App.-San Antonio 1980, writ ref'd n.r.e.); *Echols v. Bloom,* 485 S.W.2d 798, 800 n. 1 (Tex.Civ.App.-Houston [14th Dist.] 1972, writ ref'd n.r.e.); *see also* Uniform Commercial Code, 59th Leg., R.S., ch. 721, § 2–205, 1965 Tex. Gen. Laws 1, 18. Given Texas's apparently favorable experience with section 2.205, it seems logical to expand its principles to other types of option contracts.[6]

**3.** U.C.C. section 2–205 has been adopted by the District of Columbia, the United States Virgin Islands, and every state except Louisiana. 2 Ronald A. Anderson, Anderson on the Uniform Commercial Code § 2–205:2 (3d ed.1997).

**4.** A merchant is:

a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

Tex. Bus. & Com.Code § 2.104(a).

**5.** In 2003, the National Conference of Commissioners on Uniform State Laws approved a minor amendment to section 2.205, permitting the firm offer to be made in a "record" rather than a writing. U.C.C. § 2–205 (2003); Lary Lawrence, Lawrence's Anderson on the Uniform Commercial Code § 2–205:28 (Supp. 2004). "Record" means information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form. U.C.C. § 2–103(m) (2003). Texas has not yet adopted amended section 2.205. *See* Tex. Bus. & Com.Code § 2.205.

**6.** Indeed, Samuel Williston, although he did not disapprove of the U.C.C. rule, advocated a broader approach (perhaps like that of his Uniform Written Obligations Act):

But perhaps Justice Holmes's aphorism that "a page of history is worth a volume of logic" applies here. *New York Trust Co. v. Eisner*, 256 U.S. 345, 349, 41 S.Ct. 506, 65 L.Ed. 963 (1921). A rule known only to lawyers and relied on by parties seeking a technicality by which to avoid contractual obligations, consideration in option contracts is a relic, much like the seal of earlier days.[7] Although Texas eliminated the seal requirement in 1858,[8] our courts continue to insist on a formalistic (even if false) recitation of consideration in an option contract that both parties enter into willingly, fully expecting it to be enforceable, and as part of an underlying transaction that is supported by consideration. It is time to put this "overworked shibboleth" to rest. *Rye v. Phillips*, 203 Minn. 567, 282 N.W. 459, 460 (1938).

For these reasons, I concur in the Court's judgment but not in its reasoning.

Section 2–205 proposes to change the existing law of contracts by making binding without consideration an offer stated to be "firm" or otherwise irrevocable for a period not exceeding three months.... I strongly favor enactment of some such statute .... It is, however, unfortunate that there should be a different rule for contracts for the sale of goods from that governing sales of shares of stock or of land, or indeed for any other offer or promise. It would be better to enact a general statute on the subject than to make this special rule for the sale of goods.
Samuel Williston, *The Law of Sales in the Proposed Uniform Commercial Code*, 63 HARV. L. REV. 561, 576–77 (1950) (footnote omitted).

7. "When the seal was in its heyday as a legal formality, use of a sealed instrument would make a gratuitous promise enforceable." Mark B. Wessman, *Retraining the Gatekeeper: Further Reflections on the Doctrine of Consideration*, 29 Loy. L.A. L.Rev. 713, 833 (1997).

8. *See* Act approved Feb. 2, 1858, 7th Leg., R.S., ch. 78, § 1, 1858 Tex. Gen. Laws 96, 96, *reprinted in* 4 H.P.N. Gammel, The Laws of Texas 1854–1861, at 968, 968 (Austin, Gammel Book Co. 1898).