Affirmed and Opinion filed October 30, 2007








Affirmed and Opinion filed October 30, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00323-CV

____________

 

CHARLES SANDEL, Appellant

 

V.

 

ATP OIL & GAS CORPORATION, Appellee

 



 

On Appeal from the 157th
District Court

Harris County, Texas

Trial Court Cause No. 2004-69748

 



 

O P I N I O N

Appellant Charles Sandel appeals from the trial court=s grant of summary
judgment in favor of appellee ATP Oil & Gas Corporation (AATP@).  We affirm.

                                                                                                                   Background








ATP, an oil and gas production company, hired Sandel on
April 26, 1999 as its Director of Land and Associate Counsel.  Pursuant to its
stock option plans, ATP periodically offered its employees stock options. 
During his employment, ATP offered Sandel three grants of stock options.  In
1999 and 2000, ATP granted Sandel stock options, and he signed a ANonqualified Stock
Option Agreement@ as required by ATP in conjunction with
the grant.  Sandel signed no such stock option agreement for the final of the
three stock option grants in 2001, and it is the third offer that is the focus
of this litigation.

On May 17, 2001, ATP sent Sandel a letter, which was signed
by T. Paul Bulmahn, ATP=s president.  This letter discussed
changes to Sandel=s base salary and vacation benefits.  As
to stock options, the letter stated as follows:

Further, ATP is pleased to grant
you options for stock ownership of the company in the amount of 20,000 shares
at the market value as of closing of the market exchange on May 17, 2001. 
One-quarter of these options will be exercisable on July 1, 2002, and
one-quarter each succeeding year on that date.

The
letter concluded, AYour dedication and hard work is
recognized and valued.@  Unlike in 1999 and 2000, this letter was
not accompanied by a stock option agreement for Sandel=s signature, which
surprised Sandel.  Rather, sometime later (the record does not reveal exactly
when), Bulmahn provided Sandel with a stock option agreement and asked him to
sign it.  Sandel refused, stating that he wanted to read it.  He later told
Bulmahn=s assistant that
he had Aconcerns@ about the
agreement.

In June of 2003, Sandel resigned his position at ATP
without ever having signed the stock option agreement.  Over a year later, in
September 2004, Sandel wrote Bulmahn a letter requesting details about how to
exercise the stock options discussed in the May 2001 letter.  ATP responded by
letter, informing him that he had no options to exercise because, according to
the stock option agreement, he was entitled to exercise vested options only
during the six months following the end of his employment.  More letters were
exchanged, with Sandel taking the position that the May 2001 letter constituted
an unconditional grant of stock options and ATP insisting that the letter
merely notified Sandel of the grant and that exercise of the stock options was
governed by the stock option agreement and the company=s stock option
plan.








In December 2004, ATP filed a declaratory judgment action,
seeking a declaration that the May 2001 letter was not an enforceable grant of
stock options.  The trial court granted ATP=s motion for
summary judgment, specifically finding that the May 2001 letter did not
constitute a binding agreement.  Sandel now appeals, arguing in one issue that
the trial court erred in granting summary judgment because the May 2001 letter
is binding, both under the common law and Texas statutory law, and asserting
that ATP is estopped from denying that the letter is binding.

                                                                                                                   Analysis

Appellee=s motion for summary judgment contained
both traditional and no‑evidence grounds.  See Tex. R. Civ. P. 166a(c), (i).  The
standard of review for a traditional motion for summary judgment is whether the
successful movant at the trial level carried its burden of showing that there
is no genuine issue of material fact and that judgment should be granted as a matter
of law.  KPMG Peat Marwick v. Harrison County Hous. Fin. Corp., 988
S.W.2d 746, 748 (Tex. 1999).  A defendant must conclusively negate at least one
essential element of each of the plaintiff=s causes of action
or conclusively establish each element of an affirmative defense.  Sci.
Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997).  Under this
traditional standard, this court must take as true all evidence favorable to
the nonmovant and must make all reasonable inferences in the nonmovant=s favor.  See
id.  We review a no‑evidence summary judgment de novo by construing
the record in the light most favorable to the nonmovant and disregarding all
contrary evidence and inferences.  Merrell Dow Pharms., Inc. v. Havner,
953 S.W.2d 706, 711 (Tex. 1997).  A no‑evidence summary judgment is
improperly granted when the respondent brings forth more than a scintilla of
probative evidence that raises a genuine issue of material fact.  See Tex. R. Civ. P. 166a(i); Coastal
Conduit & Ditching, Inc. v. Noram Energy Corp., 29 S.W.3d 282, 284
(Tex. App.C Houston [14th Dist.] 2000, no pet.).








In 1464-Eight, Ltd. v. Joppich, 154 S.W.3d 101, 110
(Tex. 2004), the Texas Supreme Court adopted section 87 of the Restatement
(Second) of Contracts regarding option contracts.  Section 87 provides, in
pertinent part:

(1)  An offer is binding as an option contract if it

(a)  is in writing and signed by the offeror,
recites a purported consideration for the making of the offer, and proposes an
exchange on fair terms within a reasonable time; or

(b)  is made
irrevocable by statute.

Restatement (Second) of Contracts ' 87(1) (1981); see
also Joppich, 154 S.W.3d at 110.  Thus, an offer is irrevocable if it
either meets the elements in section 87(1)(a) or meets the requirements of a
relevant statute.  Sandel argues that the May 2001 letter irrevocably grants
him stock options under both theories.








We conclude the May 2001 letter is not irrevocable under
section 87(1)(a) of the Restatement.  Section 87(1)(a) requires that an offer
be in writing and Arecite[] a purported consideration for the
making of the offer.@  Consideration is a bargained for
exchange consisting of a benefit to the promisor or a detriment to the
promisee.  Roark v. Stallworth Oil & Gas, Inc., 813 S.W.2d 492, 496
(Tex. 1991).  The parties have not cited, and we cannot find, any cases from
Texas or other states defining how consideration must be Arecite[d]@ under section
87.  The plain meaning of recite is A[t]o relate in
detail@ or A[t]o list or
enumerate.@  American Heritage
Dictionary (4th ed. 2006); see also Black=s Law Dictionary 1298 (8th ed. 2004) (stating that a Arecital@ is A[a]n act or
description of some fact or thing@).  Thus, the
bargained for exchange must be detailed or enumerated in the offer.  The May
2001 letter does not detail or enumerate any consideration for granting stock
options.  As Sandel testified in his deposition, he considered the letter as
being given with Ano strings attached,@ and he
specifically indicated that no one asked him to give up any rights to receive
the letter.  Apparently recognizing that his past service cannot constitute
consideration,[1]
Sandel argues on appeal that the final statement in the May 2001 letter, AYour dedication
and hard work is recognized and valued,@ implies an
expectation of continued hard work, but that argument is inconsistent with his
deposition testimony that the letter came with no strings attached.  Further,
any such implied consideration is not recited in the letter and is thus
insufficient under section 87(1)(a).  Sandel also argues that he continued
working for ATP for two years after receiving the May 2001 letter and that his
actual continued employment constitutes consideration.  However, as discussed
above, that continued employment was not bargained for, and A[t]he detriment
[to the promisee] must induce the making of the promise.@  Roark,
813 S.W.2d at 496.  For these reasons, we conclude the trial court did not err
in granting summary judgment on the ground that the May 2001 letter is not
binding under section 87(1)(a).

We now consider whether the May 2001 letter is binding
under section 87(2) pursuant to a statute.  Article 2.14-1 of the Texas
Business Corporations Act governs the grant of stock options.  It provides that
a corporation may create stock options and that such options Ashall be evidenced
in such manner as the board of directors shall approve.@  Tex. Bus. Corp. Act Ann. art. 2.14-1, '' A, C (Vernon
Supp. 2006).  ATP=s board of directors, in its stock option
plan, set forth the manner in which stock options can be granted and
exercised.  The stock option plan provided:

Each Option shall be evidenced by
an Option Agreement in such form and containing such provisions not
inconsistent with the provisions of the Plan as the Committee from time to time
shall approve . . . . Each Option Agreement shall specify the effect of
termination of . . . employment . . . .








We
conclude that the May 2001 letter does not evidence the grant of stock options
as required by ATP=s board of directors.  The stock option
plan requires that all options be evidenced by a stock option agreement that
specifies the effect of termination of employment.  Although the stock option
agreement Sandel refused to sign specified that such options expired six months
after termination, the May 2001 letter was silent on the subject and thus could
not constitute a stock option agreement under the stock option plan.  Sandel
argues that the stock option plan and stock agreement are irrelevant because
ATP=s board of
directors designated Bulmahn as the person to grant stock options and Bulmahn=s May 2001 letter
did not impose any conditions on the grant.  However, even if the board of
directors designated Bulmahn to grant stock options, there is no evidence that
he was authorized to do so in a manner inconsistent with the stock option
plan.  Thus, although there are no Texas cases interpreting article 2.14-1 in
the context of stock options, we conclude that under the plain meaning of the
statute, the May 2001 letter was not irrevocable under the statute because the
letter did not grant options in the manner required by the stock option plan,
and therefore the trial court did not err in granting summary judgment on this
basis.








Finally, Sandel argues that ATP is estopped from contending
that the May 2001 letter is not binding under the doctrine of promissory
estoppel.  Promissory estoppel is a defensive theory that estops a promisor
from denying the enforceability of a promise.  Trammel Crow Co. No. 60 v.
Harkinson, 944 S.W.2d 631, 636 (Tex. 1997).  The elements of promissory
estoppel are a promise that the promisor can foresee will cause substantial,
detrimental reliance by the promisee.  See English v. Fischer, 660
S.W.2d 521, 524 (Tex. 1983).  To show detrimental reliance, the plaintiff must
show that he materially changed his position in reliance on the promise.  Miller
v. Raytheon Aircraft Co., 229 S.W.3d 358, 379 (Tex. App.CHouston [1st
Dist.] 2007, no pet. h.); see also English, 660 S.W.2d at 524 (finding no
promissory estoppel when plaintiff could not show that he would not have taken
his detrimental actions if defendant had not made promise).  Sandel contends
that the May 2001 letter constitutes a promise that he detrimentally relied
upon by continuing to work at ATP for two years after receiving it.  He argues
that this either establishes his promissory estoppel defense as a matter of law
or at least raises a fact issue precluding summary judgment.  We disagree. 
Assuming the May 2001 letter constitutes a promise, Sandel has offered no
evidence of detrimental reliance.  Sandel claims his testimony that he did not
seek other employment for two years shows detrimental reliance.  However, when
Sandel received the May 2001 letter, he had no employment offers or pending
interviews and had not identified any potential employers.  Failure to seek
another job is insufficient because Sandel must show that but for the letter,
he would have stopped working for ATP, and he presented no such evidence.  See
English, 660 S.W.2d at 524; Miller, 229 S.W.3d at 379; see
also First Nat=l Bankshares of Beloit, Inc. v.
Geisel, 853 F. Supp. 1344, 1356 (D. Kan. 1994) (concluding that evidence that
plaintiffs relied on promise of stock options in declining to pursue other
employment opportunities was insufficient to raise fact issue on detrimental
reliance element of promissory estoppel defense); cf. Johnson & Johnson
Med., Inc. v. Sanchez, 924 S.W.2d 925, 930 (Tex. 1996) (holding that employer=s promise to
recall laid off employee could not support fraud claim because employee did not
present any evidence of detrimental reliance Asuch as turning
down other offers of employment@); Miller, 229 S.W.3d at 379
(finding no promissory estoppel when employee accepted new job based on
employer=s promise when
former position was no longer available).  Thus, we conclude the trial court
did not err in granting summary judgment on Sandel=s promissory
estoppel defense.

We affirm the trial court=s judgment.

 

 

 

/s/      Leslie B. Yates

Justice

 

 

Judgment rendered
and Opinion filed October 30, 2007.

Panel consists of
Justices Yates, Seymore, and Edelman.*

 









[1]  See Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,
209 S.W.3d 644, 659 (Tex. 2006) (Jefferson, C.J., concurring) (noting that A>past consideration= is
not consideration@).





*  Senior Justice Richard H. Edelman sitting by
assignment.